UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

**E. S.,**

Plaintiff,

v. **No. 4:25-cv-01438-P**

**KELLER INDEPENDENT SCHOOL DISTRICT,**

Defendant.

## MEMORANDUM OPINION & ORDER

Before the Court are the Parties' cross Motions for Judgment on the Administrative Record. ECF Nos. 13, 14, 23. Plaintiff E.S. (hereinafter known as "Jane") seeks reversal of the Administrative Law Judge's denial of reimbursement and prospective funding for her placement at a private school, Novus Academy. Defendant Keller Independent School District seeks reversal of the ALJ's determination that it denied Jane a free appropriate public education. Having considered the parties' arguments, the administrative decision, the record, and the applicable law, the Court concludes that the ALJ's decision should stand. Accordingly, the Court **DENIES in part** Plaintiff's motion, ECF No. 13, and **GRANTS in part** Defendant's motion. ECF No. 14, 23, as explained in further detail below.

## BACKGROUND

Jane is a student with autism, emotional disturbance, speech impairment, and other health impairment. She returned to the District for ninth grade during the 2023–24 school year after participating in an online program the prior year. Her disabilities included anxiety and a history of school refusal. Decision at 4–5, ECF No. 27.

The District developed an individualized education program (IEP) that included classroom support, counseling, accommodations,

behavioral goals, and thirty minutes of parent or in-home training each semester. District personnel repeatedly adjusted Jane's schedule, communicated with her mother, and considered alternative settings as attendance became more infrequent. Eventually, parties agreed to placement in CORE, a behavioral support program that maintained access to general education classes. Jane attended that program only sporadically, left campus on March 22, 2024, and did not return for classes that school year. The District undertook a reevaluation that May and proposed a reintegration plan, which included a parent in-home training assessment, but ultimately concluded that parent training was inapplicable. Jane's parents enrolled her at Novus for the following school year where her attendance increased and grades improved. *Id*. at 6–17.

After a three-day hearing that included five witnesses for Jane, and three witnesses for the school district, the ALJ concluded that the District denied Jane a free appropriate public education by failing to implement the parent-training provision of the September 2023 IEP and by offering an inadequate program for the following school year. The ALJ nevertheless denied reimbursement and prospective placement because Jane had not established that Novus was appropriate for her needs. The ALJ instead ordered limited parent counseling, training, and in-home consultation to remediate the injury, subject to specified reenrollment and participation. Both sides challenge the portions of that decision unfavorable to them. ECF Nos. 13, 23.

**STANDARD OF REVIEW**

The IDEA permits any party aggrieved by a state hearing officer's final decision to sue in federal court. *See* 20 U.S.C. § 1415(i)(2)(A). "[A]lthough the district court must accord due weight to the hearing officer's findings, the court must ultimately reach an independent decision based on a preponderance of the evidence." *Klein Indep. Sch. Dist. v. Hovem*, 690 F.3d 390, 394 (5th Cir. 2012) (quotation omitted).

This "is by no means an invitation to the courts to substitute their own notions of sound educational policy for those of the school authorities which they review." *Bd. of Educ. v. Rowley*, 458 U.S. 176,

206 (1982). However, "[t]he fact that § 1415(e) requires that the reviewing court 'receive the records of the [state] administrative proceedings' carries with it the implied requirement that due weight shall be given to these proceedings." Id. Thus, when reviewing a summary judgment, the question is not "whether there are disputed issues of fact, but rather, whether the administrative record, together with any additional evidence, establishes that there has been compliance with IDEA's processes." *E.R.ex rel. E.R. v. Spring Branch Indep. Sch. Dist.*, 909 F.3d 754, 762 (5th Cir. 2018) (quotation omitted).

The ALJ heard witnesses, evaluated competing accounts, and explained the findings in a detailed decision. Those findings, particularly the credibility determinations, deserve due weight. The Court has independently considered the parties' objections and agrees with the ALJ's ultimate conclusions for the reasons that follow.

## ANALYSIS

The court's analysis proceeds in three parts. First, the Court concludes that the District denied Jane a free appropriate public education. Second, it concludes that that Jane did not carry her burden for placement in Novus. Third, it discusses and adopts the ordered relief of the ALJ.

### A. The District failed to provide a free appropriate public education

The District's program was not reasonably calculated to provide Jane with a free appropriate public education because it failed to adequately implement the very plan it devised and then proceeded to eliminate a critical step. The IDEA requires an educational program reasonably calculated to enable a child to make progress appropriate in light of the child's circumstances. 20 U.S.C. § 1400(d); *Bd. Of educ. Of Hendrick Hudson Cent. Sh. Dist. v. Rowley*, 458 U.S. 176, 188–89, 200–04 (1982). It requires a reasonable program, not an ideal one, and does not guarantee a particular result. *Endrew F. ex. Rel. Joseph F. v. Douglas Cnty. Sch. Dist. RE-1*, 580 U.S. 386, 398–403. (2017). The Fifth Circuit considers four indicators of appropriateness: individualization based on assessment and performance, education in the least restrictive

environment, collaboration between stakeholders, and positive academic and non-academic benefits. *Cypress-Fairbanks Indep. Sch. Dist. v. Michael F. by Barry F.*, 118 F. 3d 245, 253 (5th Cir. 1997). These factors guide the inquiry without mechanical application or controlling weight. *Richardson Indep. SCh. Dist. v. Michael Z.*, 580 F.3d 286, 294 (5th Cir. 2009). The burden of proof is on the party challenging the IEP. *See Schaffer ex rel. Schaffer v. Weast*, 546 U.S. 49, 62 (2005).

1. The program was insufficiently individualized

The September 2023 IEP reflected substantial attention to Jane's individual needs. It addressed attendance, coping skills, emotional regulation, monitoring schoolwork, and provided accommodations intended to reduce anxiety and overstimulation. The District continued to change classes and explore placements as difficulties arose. The Court agrees with the ALJ that the program was initially adequately individualized and that the record did not establish that the reduction of parent training to thirty minutes per semester was itself substantively inappropriate. Decision at 20–21, ECF No. 27.

The problem is that the District did not deliver that service. By May 2024, Jane near-total absence made access to the proposed instruction a central concern. The District nonetheless removed parent training from the May 2024 IEP while continuing to rely on the CORE program and proposed reintegration plan. Those were meaningful efforts, but they were severely limited by the mother's inability or unwillingness to help refine or implement the plan. True, some of that responsibility lies on the parent. But even so, the ALJ reasonably distinguished offering campus support from providing the assistance required for Jane to access them in the first place. Based on the record, the proposed program did not adequately address that need in an individualized fashion. The May 2024 IEP abandoned efforts to train the parents, which was critical to getting Jane into the door. Thus, though seemingly minor when compared with the other portions of an admittedly detailed plan, the record shows that this failing slowly unraveled her public education. *Id.* at 21–22, 29–30.

2. <u>The District provided the least restrictive environment but it could not be accessed</u>

The District initially supported Jane's general education and considered more structured settings as her difficulties increased. CORE retained opportunities for instruction and with nondisabled peers. The record does not justify condemning that program generally, particularly when Jane attended it for only approximately a day and a half. *Id.* at 22–24.

The ALJ's concern was more focused. The problem once more is that the failure to provide parent support included in Jane's IEP impeded her ability to access the proposed environment. The Court agrees with that assessment. It does not follow that CORE was inherently inappropriate or that Novus was necessarily the least restrictive appropriate placement. Rather, the missing link—parental training—bears on whether the District's proposed arrangement could meet Jane's needs. This factor must be considered with the others, rather than artificially narrowing in on the classroom in which instruction was to be offered.

3. <u>Coordination and collaboration broke down</u>

The District's efforts were substantial and nothing in this opinion should be read to diminish that. Staff responded to concerns, made repeated schedule changes, discussed placement options, added transportation, and offered practical advice concerning routines and reinforcement at home. The parents arguably bear an even more weighty obligation to cooperate as masters of the home. Their refusal to participate in refining the reintegration plan hindered the process. The Court therefore does not adopt Plaintiff's characterization that the District provided no meaningful assistance.

But those efforts, however substantial, nevertheless failed to deliver on key promises of the IEP: they did not implement the parent-training service. The Court agrees that this indicated a breakdown in coordination between key stakeholders. The ALJ credited the mother's testimony that the service was not provided. The ALJ also considered her difficulty applying the recommendations in light of Jane mental-

health history and disability-related need. Decision at 24–25, 28–30. The Court agrees that the advice and exchanges, helpful though they were, did not on this record substitute for the omitted service. That conclusion rests on the evidence about what was actually provided, not on a rule that training must bear a particular label or always follow a particular format. The parent's shortcomings do not erase the District's separate obligation to implement the September 2023 IEP or their crucial omission from the May 2024 IEP.

4. Academic and nonacademic benefits of the plan were absent

The District identifies passing grades early in the year, positive teach observations, and Jane's completion of online work during the spring. Those matters support its position that portions of the program were useful and that Jane could benefit when she participated. *See* ECF No.23 at 20–21. But the ALJ also considered the subsequent collapse in attendance, failing classes, and little sustained progress toward IEP goals. Decision at 25–26, ECF No. 27. This was more than a brief regression.

Poor outcomes alone do not establish an IDEA violation, and the District was not required to *guarantee* attendance. But this Court agrees that the IEP should address "a student's resistance to attending school where it is related to his disability and prevent[s] the student from benefiting from special education." *Lexington County School District One v. Frazier*, No. 3:10-01808-MBS, 2011 WL 4435690, at *9 (D.S.C. Sept. 22, 2011). Here, the decline occurred alongside the complete omission of a service intended to help the parents support Jane's education, followed by removal of that service despite her continuing difficulty accessing school. Considered together, those circumstances support the ALJ's conclusion that the program did not adequately meet Jane's needs.

For these reason's the Court concurs with the ALJ's FAPE conclusion that, applying the *Michael F.* factors, the District's program was not reasonably calculated to provide the student with a free appropriate public education. Decision at 26, ECF No. 27.

**B. Jane is not entitled to private placement at public expense**

Private-school reimbursement requires proof of both that the public program was inappropriate and that the private placement was appropriate. *Sch. Comm. of Burlington v. Dep't of Educ.*, 471 U.S. 359, 370 (1985); F*lorence County Sch. Dist. Four v. Carter by & Through Carter*, 510 U.S. 7, 12–15 (1993). Jane bears the burden of establishing entitlement to the requested relief. *See Schaffer ex rel. Schaffer v. Weast*, 546 U.S. 49, 62 (2005).

1. <u>The public program was inappropriate</u>

For the reasons above, the Court agrees with the ALJ's finding that the District denied Jane a free public education during the relevant period. The first requirement is therefore satisfied. It does not by itself, however, establish entitlement to funding.

2. <u>The evidence does not establish that Novus provides an educational program suited to Jane's particular needs</u>

The remaining question is whether the evidence establishes an educational program suited to Jane's particular needs. It does not.

True, the evidence concerning Novus was favorable in some respects. Jane's mother described improved attendance, greater comfort at school, and academic progress. Jane also points to testing, grades, and recommendations on positive reinforcement, private presentations, and social-emotional breaks. *See* ECF No. 13 at 18–19, 24–25. The Court has considered those arguments and does not take the ALJ's conclusion to require ignoring that evidence.

But neither improved attendance nor academic progress alone is sufficient to demonstrate that it is appropriate. *See, e.g., Gagliardo v. Arlington Cent. Sch. Dist.*, 489 F.3d 105, 115 (2d Cir. 2007). The ALJ found that the record did not sufficiently explain how Novus delivered instruction and services addressing Jane's particular needs. Of Jane's five witnesses, not one was from Novus Academy. The accommodations identified by Jane describe potentially useful measures, but there are no records describing how these address Jane's particular form of school

refusal, anxiety, or related educational needs. The record contains improved grades and attendance, but nothing that connects those improvements to Novus's individualized educational program other than Jane's post-hearing say-so.

That is not to say that testimony from a private-school employee nor a public-school-style IEP is categorically required. The Court's conclusion rests on the insufficiency of the showing as a whole, rather than any single missing form of proof. Giving due weight to the ALJ's assessment and independently considering Jane's objections, the Court agrees that Jane did not carry her burden. That same evidentiary deficiency defeats the request for prospective funding.

**C. The ordered relief addresses Jane's injury**

The IDEA authorizes appropriate equitable relief. 20 U.S.C. § 1415(i)(2)(C)(iii). Further, determining compensatory education awards is "within the 'broad discretion' of courts fashioning and enforcing IDEA remedies." *Reid ex rel Reid v. District of Columbia*, 401 F.3d 516, 522 (D.C. Cir. 2005) (cleaned up). In determining a compensatory award, this Court has jurisdiction to receive the record of the administrative proceeding and "[base] its decision on the preponderance of the evidence, [to] grant such relief as the court determines is appropriate." *Id.* § 1415(i)(2)(C). Compensatory services should address the education deficit caused by the violation rather than mechanically replace missed service minutes. *See Spring Branch Indep. Sch. Dist. v. O.W.*, 961 F.3d 781, 799 (5th Cir. 2020).

The ALJ's award provides a minimum of eight weekly one-hour pre-training sessions and four weekly one-hour in-home consultations with various requirements. Decision at 33–35. This award addresses the omitted support while recognizing that success also requires parental participation. Its express conditions preserve that shared responsibility. The Court finds the remedy appropriately tailored and leaves its terms and conditions intact. The record supports neither setting aside that limited relief nor substituting the substantially broader private placement relief Plaintiff seeks. The Court therefore wholesale adopts the remedies of the ALJ. Decision at 33–35.

## CONCLUSION

Plaintiff's motion, ECF No. 13, is **GRANTED** insofar as it seeks to sustain the ALJ's findings of an IDEA violation and the compensatory services ordered, and **DENIED** insofar as it seeks reimbursement or prospective funding for Novus Academy. Defendant's motion, ECF Nos. 14, 23, is **GRANTED** so far as it seeks to sustain the denial of private-placement relief, and **DENIED** insofar as it seeks to overturn the findings of an IDEA violation and the compensatory reward.

The Court reserves ruling on attorneys' fees and further **ORDERS** Plaintiff to file an appropriate Motion and briefing by October 9, 2026, should she still wish to pursue them. Defendant has seven days to respond thereafter.

**SO ORDERED** on this **2nd day of October 2026.**

Mark T. Pittman
UNITED STATES DISTRICT JUDGE